# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CHRISTOPHER WAYNE DELPH, | ) | |
| SARA FRANCES DELPH, | ) | |
| | ) | Case No. 19-72494-SCS |
| *Debtors.* | ) | |
| | ) | |
| BRANDON ZEIGLER, | ) | |
| SAGIE DORON, | ) | |
| FIRST CLASS SHIPPING | ) | |
| LOGISTICS, LLC, | ) | |
| | ) | APN 19-07024-SCS |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER WAYNE DELPH, | ) | |
| | ) | Chapter 7 |
| *Defendant.* | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter came on for hearing on April 7, 2021, upon the Motion for Summary Judgment filed on October 18, 2020, by Brandon Zeigler, Sagie Doron, and First Class Shipping Logistics, LLC (collectively, the "Plaintiffs"), by counsel, and the response thereto filed by the Defendant, Christopher Wayne Delph, who is unrepresented in this adversary proceeding. Counsel for the Plaintiffs and Mr. Delph appeared at the hearing and presented their arguments. At the conclusion of the hearing, the Court took the matter under advisement. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a). This Memorandum Opinion constitutes the Court's conclusions of law.

## I. PROCEDURAL HISTORY

Christopher Wayne Delph and Sara Frances Delph (the "Debtors"), by counsel, filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on June 29, 2019. Clara P. Swanson, Esquire, was appointed to serve as the Chapter 7 Trustee. On October 5, 2019, the Plaintiffs, by counsel, timely filed a complaint seeking a determination of the dischargeability of debt (the "Complaint") owed to them by Mr. Delph (the "Defendant"). ECF No. 1 (hereinafter, "Complaint").[1]

Count I of the Complaint seeks judgment and a determination that such amount is nondischargeable pursuant to 11 U.S.C. § 523(a)(2) because Mr. Delph allegedly made materially false representations as to the financial condition of the corporate Plaintiff, First Class Shipping Logistics, LLC (which the Plaintiffs assert was an insider of Mr. Delph), to the two individual Plaintiffs, upon which the latter reasonably relied. *Id*. ¶¶ 76-80. The Complaint further asserts that Mr. Delph knew or should have known such representations would induce Plaintiffs' Zeigler's and Doron's reliance thereupon, and as a result, the individual Plaintiffs were harmed. *Id*. ¶¶ 81-82. The Plaintiffs seek a nondischargeable judgment for compensatory damages of $250,000.00. *Id*. at prayer.

Count II seeks a judgment for compensatory damages of $500,000.00 and a determination that such amount is nondischargeable pursuant to 11 U.S.C. § 523(a)(6) on the basis that Mr. Delph willfully and maliciously injured the corporate Plaintiff by purportedly utilizing its assets for noncorporate purposes and failing to perform proper maintenance on those assets. *See id*. ¶¶ 83-

---

[1] Unless otherwise indicated, all docket entry references are to the docket of the above-captioned Adversary Proceeding.

106, prayer.  The Complaint further asserts that Mr. Delph's actions harmed the corporate Plaintiff's business and property.  *See id*. at ¶ 106.

Count III seeks a determination that certain debts are nondischargeable pursuant to 11 U.S.C. § 523(a)(6) because Mr. Delph allegedly made false and malicious statements about the individual Plaintiffs to employees of the corporate Plaintiff.  *Id*. ¶¶ 107-12.  Further, the Complaint argues that Mr. Delph's willful and malicious statements harmed the corporate Plaintiff and its reputation.  *Id*. ¶ 113.  For these actions, the Plaintiffs seek a nondischargeable judgment for compensatory damages of $1,000,000.00.  *Id*. at prayer.  Regarding all counts, the Plaintiffs further seek the imposition of punitive damages and a declaration of the nondischargeability of such damages.  *Id*.

The Court scheduled the Pretrial Conference in this proceeding for December 5, 2019, at 9:30 a.m.  ECF No. 4.  Mr. Delph, appearing *pro se* in this adversary proceeding, filed a response to the Complaint on November 5, 2019.  ECF No. 6.  The Clerk's Office issued a notice of deficient filing to Mr. Delph on November 6, 2019, because Mr. Delph failed to include with his response a certification pursuant to Local Bankruptcy Rule 2090-1.  ECF No. 7.  Mr. Delph re-filed his response and the required Local Bankruptcy Rule 2090-1 certification on November 21, 2019.  ECF No. 11.

The Plaintiffs filed a Motion to Strike Responsive Pleadings pertaining to Mr. Delph's November 5, 2019 and November 21, 2019 responses on November 25, 2019, which was followed by a Corrected Motion to Strike Responsive Pleadings (the "Motion to Strike") on November 26, 2019.  ECF Nos. 14, 16.  The Court scheduled a hearing on the Plaintiffs' Motion to Strike for December 19, 2019, and continued the Pretrial Conference to the same date so as to coincide with

the hearing on the Motion to Strike.  ECF No. 19.  Mr. Delph responded to the Motion to Strike on December 9, 2019.  ECF No. 22.

The Pretrial Conference and a hearing on the Motion to Strike was held on December 19, 2019; counsel for the Plaintiffs and Mr. Delph appeared.  The Court advised the parties that the relief sought by the Plaintiffs in Count III of the Complaint constituted a personal injury claim under Virginia law, which the Court does not have jurisdiction to liquidate under 28 U.S.C. § 157. *See* ECF No. 80, Dec. 19, 2019 Pretrial Conference Transcript, at 3 (hereinafter, "Dec. 19, 2019 Transcript"); *see, e.g.*, *Ayers v. U.S. Dep't of Def.* (*In re Ayers*), 581 B.R. 168, 175 (Bankr. W.D. Va. 2018) ("Despite its broad reference of bankruptcy authority under Section 157, a bankruptcy court does not have authority over all types of bankruptcy proceedings.  An important reservation prohibits the bankruptcy court from adjudicating personal injury tort and wrongful death claims.") (citing 28 U.S.C. § 157(b)(5)), *aff'd*, Civil Action No. 7:18-cv-00032, 2019 WL 4145240 (W.D. Va. Aug. 30, 2019); *see also Gilmore v. Jones*, 370 F. Supp. 3d 630, 664 (W.D. Va. 2019) (tort actions include claims of defamation); *Breckenridge v. Albemarle Cnty. Police Dep't*, Civil Action No. 7:07-cv-00326, 2007 WL 2029305, at *2 (W.D. Va. July 10, 2007) (citations omitted) ("[D]efamation, libel, and slander are tort claims traditionally governed by state law.").

Upon the Court's inquiry, the parties confirmed that they were engaged in litigation pre-petition on the Plaintiffs' claims of fraud, constructive fraud, conversion, civil and statutory civil conspiracy, and defamation *per se*, which matter remained pending in, but had been stayed by, the Circuit Court for the City of Norfolk, Virginia.  *Id*. at 3-4; *see* ECF No. 27, Order Allowing Parties to Litigate in State Court to Judgment All Claims and Counter-Claims, entered Jan. 24, 2020 (hereinafter, "Jan. 24, 2020 Order").  Without objection by the parties, the Court determined that justice would be better served by deferring both the claim asserted in Count III as well as the

4

remaining counts of the Complaint to the state court for liquidation purposes, with the parties

thereafter returning to this Court for the determination of dischargeability.  Dec. 19, 2019

Transcript, at 4.  The Court's ruling was memorialized by order entered January 24, 2020.  *See*

*generally* Jan. 24, 2020 Order.[2]  The Court scheduled a Status Hearing for May 21, 2020.  *Id*. at 2;

Dec. 19, 2019 Transcript, at 6.

On the Status Hearing was continued twice while the matters were litigated in state court.

ECF Nos. 34, 41 (orders entered May 21, 2020, and July 24, 2020, respectively, granting the

Plaintiffs' motions to continue).  The Court held the Status Hearing and a continued Pretrial

Conference telephonically on October 8, 2020, at which counsel for the Plaintiffs appeared; Mr.

Delph did not appear.  Based on the representations of Plaintiffs' counsel, a hearing on the Motion

to Strike was scheduled for November 5, 2020, and the Pretrial Conference was continued to the

same date.  ECF No. 47, Order Continuing Pretrial Conference, entered Oct. 14, 2020.

On October 18, 2020, the Plaintiffs filed the Motion for Summary Judgment currently

under consideration by the Court.  ECF No. 49 (hereinafter, "Motion").  The Court conducted the

continued Pretrial Conference and a hearing on the Motion to Strike telephonically on November

5, 2020.  Once again, counsel for the Plaintiffs appeared, but Mr. Delph did not.  For the reasons

stated on the record, the Court found that Mr. Delph's responses to the Complaint failed to satisfy

the requirements of Federal Rule of Civil Procedure 7008, granted the Plaintiffs' Motion to Strike,

and ordered Mr. Delph to file an answer to the Complaint within twenty-one (21) days of entry of

---

[2] The parties were ordered to return to and allow the state court to "adjudicate the validity and damages arising from the Fraud, Constructive Fraud, Conversion, Civil Conspiracy, Statutory Civil Conspiracy, and Defamation Per Se (collectively, the 'Claims') causes of action asserted against the Debtor and the non-debtor parties."  Jan. 24, 2020 Order, at 2.  After adjudication in the state court, "this Court shall determine whether and to the extent such Claims are non-dischargeable."  *Id*.

the order memorializing the ruling.  ECF No. 57, Order Granting Motion to Strike, entered Nov. 30, 2020.  The Court continued the Pretrial Conference to allow Mr. Delph the opportunity to file his answer.  ECF No. 55, Order Continuing Pretrial Conference, entered Nov. 9, 2020; ECF No. 59, Notice of Continued Pretrial Conference, filed Dec. 1, 2020.[3]

The continued Pretrial Conference was conducted remotely via Zoom on January 14, 2021; Mr. Delph and counsel for the Plaintiffs appeared.  Upon inquiry by the Court, Mr. Delph confirmed that he did not timely file an answer as required by the November 30, 2020 order and further represented that his address had changed; as a result, Mr. Delph did not receive all communications from the Court or from opposing counsel.  *See* ECF No. 64, Order Continuing Pretrial Conference, entered Jan. 19, 2021.  Upon consideration of Mr. Delph's representations, the Court ordered Mr. Delph to file an answer and change his address with the Court within ten (10) days of January 14, 2021, and continued the Pretrial Conference to January 28, 2021.  *Id*.  Mr. Delph filed his answer and exhibits thereto on January 26, 2021.  ECF Nos. 68, 69.

Counsel for the Plaintiffs and Mr. Delph appeared at the January 28, 2021 continued Pretrial Conference, at which time the Court again ordered Mr. Delph to provide his updated address to the Court and further ordered Plaintiffs' counsel to re-serve the Plaintiffs' Motion for Summary Judgment on Mr. Delph at his updated address.  *See* ECF No. 71, Order Establishing Deadlines on Motion for Summary Judgment, entered Feb. 5, 2021.  The Court further ordered Mr. Delph to file a response to the Motion for Summary Judgment on or before March 1, 2021, and scheduled a hearing on the Motion for Summary Judgment for April 7, 2021.  *Id*.  The Pretrial

---

[3] The Pretrial Conference was initially continued to December 3, 2020, to allow Mr. Delph the opportunity to appear and file an appropriate response to the Complaint.  The Court then continued the Pretrial Conference to January 14, 2021, to allow sufficient time following the November 30, 2020 entry of the order granting the Motion to Strike for Mr. Delph to file his answer.

Conference was continued to the same date.  *Id*.  Mr. Delph filed his response to the Motion for

Summary Judgment (the "Response") on March 1, 2021.  ECF No. 73 (hereinafter, "Response").

The continued Pretrial Conference and hearing on the Motion for Summary Judgment were held

remotely on April 7, 2021, at which time the Court took the motion under advisement.  The Court

continued the Pretrial Conference generally pending the Court's decision on the Motion for

Summary Judgment.  ECF No. 78, Order Continuing Pretrial Conference, entered Apr. 13, 2021.

## II.  THE MOTION FOR SUMMARY JUDGMENT

The Motion for Summary Judgment recounts the procedural history of the underlying

bankruptcy case, this adversary proceeding, and the state court action.  *See* Motion ¶¶ 1-12.

According to the Plaintiffs, Mr. Delph did not appear at the hearings after the matter returned to

state court or defend the litigation there.  *Id*. ¶ 9.  The Circuit Court for the City of Norfolk, Virginia

entered default judgment against Mr. Delph following a hearing held May 27, 2020; the issues of

damages and costs, however, were reserved to a later date.  *Id*. ¶ 10; *see also id.* Ex. 4, Default

Judgment Order entered by the Circuit Court for the City of Norfolk, Virginia on September 8,

2020 (Case No. CL18-542) (hereinafter, the "Default Judgment Order").  The Plaintiffs represent

that the state court conducted a hearing on September 2, 2020, as to damages and entered a final

judgment order awarding damages on October 1, 2020.  *See* Motion ¶ 11; *see also id.* Ex. 5, Final

Judgment Order entered by the Circuit Court for the City of Norfolk, Virginia on October 1, 2020

(Case No. CL18-542) (hereinafter, the "Final Judgment Order").[4]

The Plaintiffs assert that summary judgment is proper as to Counts I, II, and III of the

Complaint because the October 1, 2020 Final Judgment Order entered by the state court resolved

---

[4] Copies of the cited Default Judgment Order and Final Judgment Order were originally filed as
exhibits to the Motion for Summary Judgment.  The Plaintiffs filed certified copies of these orders
on April 3, 2020.  ECF No. 75.

all genuine disputes of material facts regarding the allegations made in the Complaint, and the Plaintiffs are thus entitled to judgment as a matter of law. *Id.* ¶¶ 11, 15. Specifically, the Plaintiffs contend the state court judgment, which they represent was based upon fraud, conversion, civil conspiracy, and defamation, provides a basis for this Court to apply the doctrine of collateral estoppel in the instant proceeding. *Id.* ¶¶ 13-14, 17. The Final Judgment Order awarded: for fraud, $484,401.57 in compensatory damages, $175,000.00 in punitive damages, 6% pre-judgment and post-judgment interest, and fees and costs of $45,332.13, all payable to the Plaintiffs; for conversion, $1,643.29 in compensatory damages, $5,000.00 in punitive damages, and 6% pre-judgment and post-judgment interest, payable to Plaintiff Sagie Doron; for civil conspiracy, $270,000.00 in compensatory damages, $350,000.00 in punitive damages, and 6% pre-judgment and post-judgment interest, payable to the Plaintiffs; and for defamation, $350,000.00 in compensatory damages, $200,000.00 in punitive damages, and 6% pre-judgment and post-judgment interest, payable to the Plaintiffs. Final Judgment Order at 2-3. In support of this argument, the Plaintiffs allege that the parties are the same in both this adversary proceeding and in the state court proceeding; "the [p]arties litigated the issue in question;" the issues in question here were essential to the Final Judgment Order; and the state court's order represents a valid, final judgment against Mr. Delph. *Id.* ¶ 17 (citing *Cheatham v. Bradley* (*In re Bradley*), 478 B.R. 796, 800 (Bankr. E.D. Va. 2012)). The Plaintiffs accordingly assert that summary judgment in their favor is appropriate and request that the Court declare the damages awarded by the state court on their fraud claim to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2), and the damages awarded on their claims of conversion, civil conspiracy, and defamation to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6). *Id.* ¶¶ 13-14, 16, 18, prayer.

### III.  MR. DELPH'S RESPONSE TO THE MOTION FOR SUMMARY JUDGMENT

Mr. Delph's response to the Motion for Summary Judgment addresses the underlying factual allegations made in the Complaint at a general level.  *See generally* Response.  Mr. Delph acknowledges, in part, the procedural status of the case by way of his annotation of the Default Judgment Order (*see id*. at 4-10) and requests that the Court dismiss the Complaint.  *See id.* at 1. Additionally, Mr. Delph notes that he believes Plaintiffs Ziegler and Doron are trying to gain money from him and that any malicious acts were performed not by him but by the individual Plaintiffs.  *Id*. at 1-2.  Mr. Delph requests that this Court examine his factual assertions regarding the Plaintiffs' actions, including their use of corporate funds for personal expenses, replacing staff, changing corporate bank accounts, and blocking Mr. Delph from handling the corporate finances. *Id.* at 1.

### IV.  CONCLUSIONS OF LAW

#### A.  The Standard for Adjudication of a Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, as incorporated in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, governs summary judgment proceedings.  The Court of Appeals for the Fourth Circuit has often articulated the standards by which this Court must measure a motion for summary judgment:

> The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "A fact is 'material' if proof of its existence or non-existence would affect the disposition of the case under applicable law.  An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant."  *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citations omitted).  Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, must demonstrate specific, material facts that give rise to a genuine issue.  *Celotex Corp.*, 477 U.S. at 323.  Under this standard, "the mere existence of a scintilla of evidence" in favor of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 252 (1986).   "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion."  *Wai Man Tom*, 980 F.3d at 1037.

Yet, "[s]ummary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits."  *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A Charles A. Wright *et al*., Federal Practice & Procedure § 2728 (3d ed. 1998)).  The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict.  "Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations."  *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). (internal quotation marks omitted and alterations adopted).  A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party.  *Id*. at 659-60.

*Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).

Further, "[o]nce the moving party makes a Rule 56 motion, '[t]he burden is on the nonmoving party to show that there is a genuine issue of material fact for trial . . . by offering sufficient proof in the form of admissible evidence . . . .'"  *Variety Stores, Inc.*, 888 F.3d at 659 (alterations in original) (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)).  If the nonmoving party fails to do so as to each essential element of the case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 322-23.  The Court is permitted to draw reasonable inferences from the underlying facts; however, "those inferences must . . . fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture."  *Thompson Everett, Inc. v. Nat'l Cable Advert. L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citing *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 817 (4th Cir. 1995)).

B.  Collateral Estoppel and the *TransDulles* Standard

The Plaintiffs allege that the doctrine of collateral estoppel applies to the Final Judgment

Order and that the issues raised in the Complaint are precluded from relitigation here.  Motion ¶¶

17-18.  The law of the state where a judgment originates controls the necessary elements of

collateral estoppel.  *Pahlavi v. Ansari* (*In re Ansari*), 113 F.3d 17, 19 (4th Cir. 1997).  In Virginia,

the doctrine of collateral estoppel is governed by the decision rendered in *TransDulles Center, Inc.*

*v. Sharma*, 252 Va. 20 (1996), which was recently discussed by the Fourth Circuit Court of

Appeals.

> Under Virginia law, a party asserting defensive issue preclusion has "the burden of
> proving that the claim or question had been in issue and determined in [a] prior . . .
> action." *Scales v. Lewis*, 261 Va. 379, 541 S.E.2d 899, 901 (2001).  Specifically,
> the proponent of issue preclusion must demonstrate that: "(1) the parties to the two
> proceedings, or their privies, be the same; (2) the factual issue sought to be litigated
> must have been actually litigated in the prior action and must have been essential
> to the prior judgment; and (3) the prior action must have resulted in a valid, final
> judgment against the party sought to be precluded in the present action."
> *Weinberger v. Tucker*, 510 F.3d 486, 491 (4th Cir. 2007) (citing *TransDulles Ctr.,*
> *Inc. v. Sharma*, 252 Va. 20, 472 S.E.2d 274, 275 (Va. 1996)).  Also, "in Virginia,
> [issue preclusion] requires a fourth element, mutuality."  *Id.* (citing *TransDulles*
> *Ctr.*, 472 S.E.2d at 275).

*Hately v. Watts*, 917 F.3d 770, 778 (4th Cir. 2019) (alterations in original).  The moving party

bears the burden of proving by a preponderance of the evidence that the elements of collateral

estoppel are met.  *In re Pro. Coatings* (*N.A.*), 210 B.R. 66, 80 (Bankr. E.D. Va. 1997) (citing *Reid*

*v. Ayscue*, 246 Va. 454, 456 (1993)).

C.  Application of *TransDulles* to Counts I, II, and III of the Complaint

In the instant matter, three of the required elements require briefer analysis than the fourth.

Here, the Plaintiffs in this action are the same as in the state court proceeding, and Mr. Delph was

one of the two named defendants in that matter.[5]  Indeed, this Court specifically allowed the parties

to return to state court to litigate Mr. Delph's liability as to the allegations raised in the Complaint.

*See* Jan. 24, 2020 Order.  Thus, the first element is satisfied since the parties to the state court and

instant proceedings are the same.

 *TransDulles* also requires that the action to be afforded preclusive effect resulted in a valid,

final judgment.  The state court issued the Final Judgment Order, which incorporated the Default

Judgment Order, and awarded damages to the Plaintiffs.  Final Judgment Order at 1-3.  In Virginia,

an order is deemed final when "it disposes of the entire matter before the court, including all

claims(s) and all cause(s) of action against all parties, gives all the relief contemplated, and leaves

nothing to be done by the court except the ministerial execution of the court's judgment, order or

decree."  Va. Sup. Ct. R. 1:1(b); *see, e.g.*, *Super Fresh Food Mkts. of Va. v. Ruffin*, 263 Va. 555,

560 (2002); *Daniels v. Truck & Equip. Corp.*, 205 Va. 579, 585 (1964).  In addition, "[a]ll final

judgments, orders, and decrees, irrespective of terms of court, remain under the control of the trial

court and may be modified, vacated, or suspended for twenty-one days after the date of entry, and

no longer."  Va. Sup. Ct. R. 1:1(a).  Here, more than twenty-one days have passed since the entry

of the Final Judgment Order on October 1, 2020.  Final Judgment Order at 3.  Neither the Plaintiffs

nor Mr. Delph have advised the Court of any modifications to, vacation, suspension, or appeal of,

the Final Judgment Order.  Therefore, based upon the record before this Court, it appears that the

order is no longer subject to the exclusive jurisdiction of the state court.  Va. Sup. Ct. R. 1:1(a).

---

[5] The second defendant in the state court is not a party to this adversary proceeding or a debtor or
codebtor in the main bankruptcy case.  The presence of a second defendant in state court does not
affect this Court's analysis of the first *TransDulles* element.  *See Beckett v. Bundick* (*In re
Bundick*), 303 B.R. 90, 102 (Bankr. E.D. Va. 2003) (finding this element of the *TransDulles*
standard was satisfied even though the second defendant in state court action was not present in
the action before the Bankruptcy Court).

The Final Judgment Order awarded damages to the Plaintiffs and resolved the entire matter brought before the state court; it did not reserve or contemplate any further issues to be decided.[6] *See generally* Final Judgment Order.  Further, the last sentence of the Final Judgment Order specifically provides, "This is a final order."  *Id*. at 3.  Finally, the Final Judgment Order was entered against the Defendant here, Mr. Delph, who is the party against whom preclusion is sought. *See generally id.*  It is clear from the record that the Final Judgment Order is a valid, final order of the state court entered against the Defendant in the instant matter.  Thus, the third *TransDulles* element is satisfied.

The fourth *TransDulles* element, mutuality, is also met here.  Mutuality in Virginia means that "a party is generally prevented from invoking the preclusive force of a judgment unless that party would have been bound had the prior litigation of the issue reached the opposite result." *TransDulles*, 252 Va. at 23 (citing *Norfolk & W. Ry. v. Bailey Lumber Co.*, 221 Va. 638, 640 (1980)).  Where the parties to both the prior and current actions are the same, the requisite mutuality exists.  *Beckett v. Bundick* (*In re Bundick*), 303 B.R. 90, 102 (Bankr. E.D. Va. 2003). Had the Final Judgment Order instead found in favor of Mr. Delph in state court, the order would have been equally preclusive against the Plaintiffs, and so mutuality is present here.

Whether the factual issues sought to be litigated in the instant matter were actually litigated and essential to the prior action is much less straightforward and warrants a more detailed analysis. For the factual issues to have been actually litigated so as to satisfy *TransDulles*, the defendant need not appear in person and contest the issues.  *TransDulles*, 252 Va. at 24.  The *TransDulles* Court explicitly rejected the contention that the entry of default judgment created a blanket

---

[6] By contrast, the Default Judgment Order specifically reserved the issues of damages, attorney fees, and pre-judgment interest for later determination.  Default Judgment Order at 8.

exemption against applying collateral estoppel, noting instead that the issues "must be the subject of actual litigation for collateral estoppel to apply." *Id*. at 25 (citing *Horton v. Morrison*, 248 Va. 304, 306 (1994)). Rather, the record of the prior proceeding must show that evidence was presented for the court's consideration. *See id*. at 24. In *TransDulles*, the Supreme Court of Virginia found that testimonial and documentary evidence was presented to the district court *ex parte* through the testimony of plaintiff's bookkeeper and attorney, the latter of whom presented documentation in support of the plaintiff's claims. *Id*. To determine whether the factual issues in the instant case were actually litigated, this Court turns to the record and the law of the Fourth Circuit.

The Plaintiffs argue that summary judgment is warranted as to Counts I, II, and III of the Complaint because the Final Judgment Order resolved any and all issues of material fact that this Court must consider in relation to the three counts in the Complaint and that they are entitled to judgment as a matter of law. Motion ¶ 15. In support of their position, the Plaintiffs cite the Final Judgment Order's incorporation by reference of the Default Judgment Order. *Id*. ¶ 16. Specifically the Plaintiffs quote the state court's finding in the latter order that Mr. Delph "committed fraud when he made numerous written representation[s] to Plaintiffs that First Class Shipping Logistics was close to profitable because Defendant Delph knew that representation was false when he made it; he made the representation with the intention of deceiving Plaintiffs; Plaintiffs justifiably relied on Defendant Delph's representation; and Plaintiffs were damaged as the proximate result of said representation." Default Judgment Order at 7; *see also* Motion ¶ 16(a). The motion also points to the Default Judgment Order's findings that Mr. Delph's conduct resulting in the claims of conversion, civil conspiracy, and defamation was willful, malicious, and intended to cause injury. Default Judgment Order at 7-8; *see also* Motion ¶ 16(b). Accordingly, the motion asserts that the

14

Final Judgment Order contains the findings necessary to support excepting the judgment for damages for fraud, conversion, civil conspiracy, and defamation from discharge pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(6).  Motion ¶¶ 13-14.

At the hearing on the Motion for Summary Judgment, Plaintiffs' counsel recounted the procedural history of the case in both this Court and state court.  *See* ECF No. 81, Apr. 7, 2021 Pretrial Conference and Hearing on Motion for Summary Judgment Transcript, at 3-5 (hereinafter, "Apr. 7, 2021 Transcript").  Upon inquiry by the Court, Plaintiffs' counsel indicated that there was nothing present in the state court record to show that evidence was presented to, accepted, and considered by the state court on the issue of liability.  *Id*. at 6.  Counsel instead referred this Court to the "extensive nature of the allegations, . . . the [state] court's finding of damages that were supported by [*sic*] the actually litigated, and also by the extensive notices . . . provided to Mr. Delph to participate" in the state court proceedings, as well as and that a demurrer was filed in the early stages of the state court proceedings.  *Id*.  Plaintiffs' counsel also asserted that the state court proceeding was not "a blanket proceeding with no supporting facts."  *Id*.  Based on these facts, Plaintiffs' counsel argued that Mr. Delph was collaterally estopped from defending the Complaint and that the elements necessary to establish nondischargeability pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6) were actually litigated in state court.  *Id*. at 6-7.

Mr. Delph responded by noting that when the demurrer was filed in the state court proceeding, he had counsel but was now self-represented.  *Id*. at 7.  He further maintained that the allegations in the Complaint have not been proven.  *Id*. at 8.  In rebuttal, Plaintiffs' counsel argued that the record from the state court action, particularly in consideration of this Court's order to return to state court, amply supported that both liability and damages were actually litigated there

and requested that the Court grant summary judgment and except the damages amounts from
discharge pursuant to §§ 523(a)(2) and (a)(6). *Id*.

Courts throughout the Fourth Circuit have applied the *TransDulles* elements for collateral
estoppel on multiple occasions and have often examined the "actually litigated" element. As
discussed below, courts finding the "actually litigated" element satisfied have consistently done
so only where it is clear from the record that evidence was presented and considered in the prior
action. In *In re Ansari*, the Fourth Circuit found that the factual issues in the state court matter
were actually litigated because the plaintiff "initiated the state court proceedings a year and a half
before the entry of the default judgment. Prior to the default, multiple depositions were taken,
many documents exchanged and the court and commissioner held numerous hearings in which
Ansari [the defendant] appeared in person or by counsel." *Pahlavi v. Ansari* (*In re Ansari*), 113
F.3d 17, 21 (4th Cir. 1997). The defendant argued that default judgment was "entered as a
discovery sanction," and thus "the parties never 'actually litigated' Ansari's fiduciary status or
whether a defalcation occurred . . . ." *Id*. at 19. The Fourth Circuit disagreed: "The question of
whether Ansari acted as a fiduciary for Pahlavi was actually litigated and resolved early in the
case. Pahlavi continually asserted that Ansari was his fiduciary and submitted documents and
depositions to support this position." *Id*. at 20. Following entry of the order finding that Ansari
was Pahlavi's fiduciary, the court ordered an accounting, which was stalled by Ansari despite
multiple discovery orders. *Id*. at 18. Ansari's actions lead the court to enter default judgment
against him, which resulted in the finding that, as a fiduciary, Ansari had engaged in defalcation.
*See id*. Damages were determined after additional hearings, including an evidentiary hearing to
decide punitive damages. *See id*. The Fourth Circuit concluded "there was much more evidence

before the state court in this case than in *TransDulles*, and the parties here certainly engaged in more extensive and two-sided litigation of the relevant issues." *Id.* at 21.

The United States Bankruptcy Court for the Western District of Virginia addressed the "actually litigated" element in *In re Bane*, where the debtor objected to a claim filed by a creditor who had obtained a default judgment in state court. *In re Bane*, 236 B.R. 352, 353 (Bankr. W.D. Va. 1999). The debtor did not appear to defend a fraudulent conversion action against him in the Circuit Court for the City of Roanoke, and the creditor-plaintiff was granted default judgment. *Id*. The state court required the creditor-plaintiff to present, at a subsequent hearing, "evidence as to both his pleadings of fraudulent conversion and his compensatory and punitive damages," after which the state court entered judgment for the plaintiff for damages. *Id*. The creditor-plaintiff asserted that the debtor was collaterally estopped from objecting to his claim after it was filed with the Bankruptcy Court. *Id*. The *Bane* Court found that the factual issues necessary to substantiate the proof of claim were actually litigated when the state court considered evidence at the damages stage of the proceeding such that the *TransDulles* standard was satisfied:

> In assessing damages, the State Court found both compensatory and punitive damages for fraudulent conversion. Its letter to the parties dated July 9, 1996, indicates that it did not enter judgment against Bane until satisfactory evidence was presented with respect both to damages and to the allegations of Abbott [the creditor] in his motion for judgment. Thus, the State Court heard evidence of fraudulent conversion as well as the amount of damages sustained by Abbott.

*Id*. at 354. Quoting *In re Ansari*, the Court recognized that evidence considered at the damages phase of the prior proceeding was sufficient to satisfy the "actually litigated" element for collateral estoppel purposes. *Id*. (quoting *In re Ansari*, 113 F.3d at 21).

Similarly, this Court, in *Cheatham v. Bradley*, concluded that the necessary factual issues were actually litigated where the state court entered judgment against a defendant who failed to appear at trial for, among other claims, fraud and misrepresentation. *Cheatham v. Bradley (In re*

*Bradley*), 478 B.R. 796, 798, 802 (Bankr. E.D. Va. 2012).  The state court's judgment order provided, in pertinent part, "The evidence of the parties was presented.  After hearing arguments of counsel and considering the testimonies of witnesses, the Court rendered the following Judgment amount of $215,181.67 for fraud and misrepresentation and $43,363.00 for breach of contract."  *Id*. at 799.  The *Bradley* Court noted that despite the limited nature of the evidence presented in state court, the facts were sufficiently similar to *TransDulles*: "Plaintiffs' evidence, slim as it is, establishes that the issues of 'fraud and misrepresentation' were actually litigated in Richmond Circuit Court . . . .  [The] defendant's filing of a counterclaim in the case is particularly cogent evidence of his active participation in the circuit court action."  *Id*. at 802-03.  The Court was also influenced in this regard by the state court findings that the defendant had requested two continuances during the proceedings, including the day of trial.  *Id*. at 798-99, 802.

Conversely, there are multiple cases where courts of the Fourth Circuit have declined to apply collateral estoppel because the factual issues necessary to award the relief requested in the subsequent case were not actually litigated in the prior proceedings.  These cases found that actual litigation did not occur where there was no evidence or testimony presented in the prior litigation or where the record was insufficient to demonstrate that the prior court had considered evidence in support of the request for relief.  The Fourth Circuit addressed this issue in *Capital Hauling v. Forbes*, where the Richmond City General District Court entered a default judgment against Forbes for fraud.  *Cap. Hauling, Inc. v. Forbes*, 75 F. App'x 170, 171 (4th Cir. 2003).  The Bankruptcy Court ruled that Forbes was collaterally estopped from litigating the fraud issue and Capital Hauling was entitled to an order excepting the resulting debt from discharge.  *Id*.  The Fourth Circuit found that:

> In the instant case, there is nothing in the record establishing that "testimonial and documentary evidence was presented" in the state court proceeding, or that "proof

was presented" of any kind as to whether appellant committed fraud, or indeed that anything occurred at all at the state court trial other than the entry of a money judgment.

*Id.* (quoting *TransDulles*, 252 Va. at 24). Therefore, the Fourth Circuit held that "[s]ince there was no evidence that the issue of fraud was actually litigated in the state court proceeding, the bankruptcy court erred by finding that appellant was collaterally estopped from litigating this issue, and hence we reverse the grant of summary judgment." *Id*. at 171-72.

Similarly, where the plaintiff obtained a default judgment in Pennsylvania state court and subsequent relief to the defaulted party was barred by *res judicata* by a Virginia state court, the United States District Court for the Eastern District of Virginia found that the factual issues were not actually litigated in the prior proceedings. *Schriver v. Valley Stream Fin. Corp.* (*In re Schriver*), 218 B.R. 797, 800-01, 804-05 (E.D. Va. 1998). Rather, the record revealed that "no evidence was offered [in the Virginia state court], ex parte or otherwise, and no factual findings were made concerning Valley Stream's Pennsylvania claims of fraud and conversion." *Id*. at 804. The Court concluded that *TransDulles* was not satisfied because the application of *res judicata* by the Virginia court "[did] not satisfy the 'actually litigated' requirement for the application of collateral estoppel." *Id.* at 805. For these reasons, the District Court reversed the Bankruptcy Court's judgment that the debt was nondischargeable. *Id*.

The District Court again found that certain factual issues were not actually litigated when the state court dismissed a breach of contract action because the plaintiff's counsel failed to prosecute the case. *Delavan v. N. Am. Co. for Life & Health Ins.*, Case No. 2:07CV375, 2007 WL 9808081, at *4-5 (E.D. Va. Dec. 11, 2007). The *Delavan* Court declined to apply collateral estoppel where it was unclear whether the necessary factual issue (if the plaintiff was a party to a contract) was actually litigated. *Id*. at *5. The Court found that it was "not clear from Plaintiff's

allegation which asserts the issue was merely argued.  Rather, the opinion on which Delavan relies debatably requires more than argument for an issue to be considered actually litigated."  *Id*. (citing *TransDulles*, 252 Va. at 24).  Having been presented with no information demonstrating that evidence was submitted to the state court on the factual issue pending before the District Court, the plaintiff's collateral estoppel argument failed.  *Id*.

The United States District Court for the Western District of Virginia affirmed the Bankruptcy Court's decision that collateral estoppel was inapplicable in *Lewis v. Long*, where a *pro se* defendant, following a criminal conviction, failed to appear in a subsequent, related civil proceeding until finally appearing at the default judgment hearing.  *Lewis v. Long*, 521 B.R. 745, 747 (W.D. Va. 2014).  The state court entered default judgment against the defendant "based . . . on the fact 'that more than twenty-one days [had] elapsed since personal service of process upon [Long] and that [Long had] failed to file responsive pleadings or make an appearance in [the] action in a timely fashion, although [he] appeared in person [on the date of the entry of the default].'"  *Id*. at 751-52 (alterations in original).  The state court thereafter scheduled a trial to determine damages; however, the parties settled the damages issue before trial.  *Id*. at 747.

When Long filed for bankruptcy protection, Lewis sought a declaration that the agreed damages amount Long owed to her was nondischargeable pursuant to 11 U.S.C. § 523(a)(6).  *Id*.  The District Court agreed with the Bankruptcy Court's conclusion that the issue of willful and malicious injury, which was necessary for the Bankruptcy Court to enter a nondischargeability judgment, was not actually litigated in the state court.  *See id*. at 749-50.  The record did not indicate that Lewis presented testimony or documentary evidence in the state court civil proceeding.  *Id*. at 750-51.  Further, "[t]he record before the court contain[ed] no evidence of Lewis and Long engaging in depositions, exchanging documents, conducting extensive pretrial hearings

20

or activity, or of Long making any pretrial appearance in the state court action." *Id*. at 751. Instead, the record indicated that the pro se defendant appeared at the default judgment hearing, despite his earlier failure to participate in the proceedings, and answered the court's questions. *See id.* at 747-48, 752. However, "Lewis did not produce any evidence of that exchange, and the default judgment order [was] silent on this point." *Id*. at 752. Ultimately, "[t]he state court's decision to enter the default judgment was based . . . not on any substantive findings as to the merits of Lewis's state tort claims, but on a procedural technicality that Long could not refute." *Id*. As the parties did not actually litigate the necessary factual issues for a finding of nondischargeability, collateral estoppel could not be applied. *See id*.

This Court previously addressed the "actually litigated" question in *In re Professional Coatings* (*N.A.*), 210 B.R. 66 (Bankr. E.D. Va. 1997), where a final judgment was entered in the Circuit Court for the City of Norfolk on a contract dispute brought by the subcontractor plaintiff. *Id*. at 71. In *Professional Coatings*, affidavits were submitted purporting to explain what happened in state court; however, this Court could not consider those affidavits as they did not fall within a hearsay exception or contain relevant evidence so as to be admissible. *See id*. at 86-88. Rather, "the best way to prove that [the state court] made a consideration of the evidence would be the submission of a transcript from the December 7, 1995 hearing." *Id*. at 86 (citing *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 119 (4th Cir. 1989); *Rountrey v. Lee* (*In re Lee*), 90 B.R. 202, 203 (Bankr. E.D. Va. 1988)). This Court ultimately held that, pursuant to *TransDulles*, "for a default judgment to trigger collateral estoppel, there must be testimony, exhibits, or some form of evidence presented to the court by the appearing party notwithstanding the one party's absence. Furthermore, this testimony or evidence must be duly considered by the trial judge notwithstanding the party's absence." *Id*. at 88 (citing *TransDulles*, 252 Va. at 23-24).

Other decisions by the Bankruptcy Court for the Eastern District of Virginia addressing the concept of "actually litigated" include *Fowler v. Garey* and *Reed v. Owens*. *Reed v. Owens* (*In re Owens*), 449 B.R. 239 (Bankr. E.D. Va. 2011); *Fowler v. Garey* (*In re Garey*), 258 B.R. 356 (Bankr. E.D. Va. 2000). In *Garey*, the state court "entered an order sanctioning Mr. Garey for his failure to appear at a deposition by finding him liable on all four counts in the Motion for Judgment." *In re Garey*, 258 B.R. at 360. The state court's final judgment order awarded compensatory damages with interest and attorney fees and costs to the plaintiff. *Id*. After the defendant filed for chapter 7 bankruptcy, the plaintiff sought to have the state court judgment amount deemed nondischargeable. *Id*. The Court denied the plaintiff's motion for summary judgment and declined to apply collateral estoppel because "there was no evidence presented as to the prior judgment except for the motion for judgment and the two orders. One of the elements that must be shown is that the issues were actually litigated. Here there was no evidence that the issues were actually litigated." *Id*. at 360, 363 (citing *TransDulles*, 252 Va. at 22-23).

In *Owens*, the Circuit Court for the City of Newport News entered a judgment order awarding the plaintiff $100,000.00 in damages, plus fees and costs, for negligence and intentional torts where that the defendants offered no defenses and failed to respond to the motion for judgment. *In re Owens*, 449 B.R. at 243. The judgment order noted that the matter was decided without a jury and that the order was final. *Id*. The Court noted, in accord with *TransDulles*, that "in determining whether to apply collateral estoppel in the face of a state court's default judgment, in the § 523(a) nondischargeability context, bankruptcy courts must look to the actions of the parties prior to the entry of that default judgment." *Id*. at 252. The record before the Court in the *Owens* case was distinguishable from that in *Ansari* because the *Owens* parties did not engage in discovery during the state court proceedings and Mr. Owens did not participate in the trial process.

*Id*. The Court acknowledged that the *Owens* state court's judgment order stated that "'evidence of the plaintiff [was] heard,'" but concluded that, unlike *TransDulles*, the record was incomplete regarding the presentation of evidence in the prior case. *Id*.

> The Court will only apply collateral estoppel when the record before it is complete. . . . Here, the Court is unable to determine with precision that the issue of Defendant's assault and battery were actually litigated on the basis of the record before the Court. The Court will not speculate as to what issues may or may not have been litigated in the state court action.

*Id*. at 252-53. The record in *Owens* only contained two documents form the state court action: the plaintiff's motion for judgment and the judgment order. *Id*. at 253. Based on the scant record and the inability to discern whether the underlying issues were actually litigated, the *Owens* Court distinguished the facts of that case from those of *TransDulles* and declined to apply collateral estoppel. *See id*.

Additionally, in an action to determine dischargeability of debts pursuant to § 523(a)(4), the Court held that collateral estoppel did not apply where the order from the prior state court action lacked any specific findings to support the rendered judgment. *Racetrac Petroleum, Inc. v. Ahmed* (*In re Ahmed*), Adv. No. 12-01045, 2012 WL 6093446, at *3 (Bankr. E.D. Va. Dec. 7, 2012). The Court noted that "other than a single reference to 'Count III,' along with a reference to Counts I, II, IV, and V, in the Judgment Order, there is nothing to suggest that the issues of whether or not the Defendant owed the Plaintiff a fiduciary duty, and whether or not the Defendant breached that duty, were actually litigated before the Circuit Court." *Id*.

Here, as in *Owens*, the Court has a sparse record to review in determining whether the factual issues necessary for this Court to determine the specified debts to be nondischargeable under Sections 523(a)(2) and 523(a)(6) were actually litigated in state court. In support of the Motion for Summary Judgment, the Plaintiffs provided as exhibits the following: (1) the "Order

Dismissing Defendants' Demurrers and Granting Plaintiffs' Motion for Leave to File an Amending

[*sic*] Complaint," along with said motion (pages 1-5 of Exhibit 1 to the motion); (2) the amended

state court complaint (pages 6-42 of Exhibit 1); (3) a two-page "Pleadings/Orders Detail" from the

state court (Exhibit 2); (4) the instant Complaint and accompanying exhibit (the operating

agreement of corporate plaintiff First Class Shipping Logistics, LLC) (Exhibit 3); (5) the Default

Judgment Order (Exhibit 4); and (6) the Final Judgment Order (Exhibit 5). *See generally* Exhibits

1-5 to Motion (hereinafter, "Ex. __". As in *Professional Coatings*, the Plaintiffs did not tender a

transcript of the state court proceedings to this Court.

       The order dismissing the demurrers and granting the Plaintiffs leave to file an amended

complaint is a procedural and scheduling-focused order; it contains no information regarding

whether evidence or testimony was, or was to be, offered in relation to the Plaintiffs' claims. *See*

Ex. 1 at 1-3. Thus, the order dismissing demurrers does not support the Plaintiffs' contention that

the factual issues necessary for this Court to determine that the debts representing the damages

awarded by the state court are nondischargeable were actually litigated in state court. The motion

seeking leave to amend the complaint sought to do so to correct a typographical error and add the

second defendant to the ad damnum clause for one of the counts. *Id*. at 4. As such, that motion

too provides no support for the Plaintiffs' position. The amended state court complaint is just as

titled—a copy of the amended complaint filed in state court, which contains only allegations and

does not contain any indication or intention to present evidence to the state court. *See generally*

*id*. at 6-42.

The "Pleadings/Orders Detail"[7] shows, in a truncated fashion, the date and filing party of the filings in the state court case but is otherwise uninformative as to whether the factual issues were actually litigated there. Ex. 2 at 1-2. The "Pleadings/Orders Detail" does, to be sure, provide confirmation of the Plaintiffs' recitation of the state court procedural history. The initial complaint and exhibit were filed January 24, 2018, and the defendants' demurrers were filed February 20, 2018.[8] *Id*. at 1. The Plaintiffs moved to amend their complaint on April 22, 2019, which was granted by order entered the same day. *Id*. The record also reflects that the state court entered three orders permitting the withdrawal of counsel on April 22, 2019, but does not specify whose counsel departed the case. *Id*. The Plaintiffs filed their motion for default judgment and accompanying exhibits on May 7, 2020, which was granted by order entered September 8, 2020. *Id*. at 2. Also, on September 8, 2020, five exhibits were filed: "PLT Amend Statement;" "Affidavit;" "Doron Statement;" "Zedgler [*sic*] Statement;" and "PAPCO Fuel Card Invoice." *Id*. None of these exhibits were produced to this Court, and the only representation by Plaintiffs' counsel during the hearing on the Motion for Summary Judgment to these items was that "[e]xhibits, affidavits, and statements were filed supporting damages." Apr. 7, 2021 Transcript, at 5. None of these items, nor the consideration of them by the state court, were referenced in the Default Judgment Order or the Final Judgment Order. The proposed final order was filed October 1, 2020. *Id*. Nothing in the "Pleadings/Orders Detail" sheds any light on whether any discovery occurred at any stage of the proceedings. Without more, the Court finds that the "Pleadings/Orders

---

[7] The Motion for Summary Judgment describes the "Pleadings/Orders Detail" document as "the on-line docket" from state court. Motion ¶ 4.

[8] Mr. Delph noted at this Court's April 7, 2021 hearing that he "had a few attorneys working the case" during the demurrer phase but that he was now defending himself due to lack of funds. Apr. 7, 2021 Transcript, at 7.

Detail" does not assist the Plaintiffs in sustaining their burden to prove by a preponderance of the evidence that the elements of collateral estoppel have been met here.

The Plaintiffs also filed as an exhibit the Complaint initiating this adversary case, which includes the operating agreement for the corporate Plaintiff, First Class Shipping Logistics. *See* Ex. 3. The Complaint contains allegations and assertions against Mr. Delph but, having been filed prior to both this Court's determination that the matters should be liquidated in the state court and the default judgment and subsequent state court proceedings, does not contain, nor could it have, any indicia that evidence or testimony as to Mr. Delph's liability would be presented to or considered by the state court. *See generally id*. at 3-16. This leaves the Default Judgment Order and the Final Judgment Order as this Court's means for determining whether the state court actually litigated the necessary factual issues as required by *TransDulles*.

The Default Judgment Order sets forth detailed findings of fact and conclusions of law, ultimately holding Mr. Delph liable to the Plaintiffs on their claims of fraud, conversion, civil conspiracy, and defamation.[9] *See generally* Default Judgment Order. The Default Judgment Order does not, however, indicate that any evidence or testimony was presented to the state court to support these findings, nor does it reference whether the parties engaged in any discovery. *See id*. The only indication of what the state court did in fact consider is set forth on the first page of the Default Judgment Order: "Upon consideration whereof, the pleadings in this case, the June 23, 2020 order requiring Defendant's [*sic*] to answer to amended suit on or before 21 days from the June hearing, the applicable laws and Rules of the Supreme Court, specifically Rule[s] 3:8 and

---

[9] The second defendant in the state court matter was also found liable to the Plaintiffs on their claim of civil conspiracy. Default Judgment Order at 8.

3:19, and for good cause shown . . . ."[10]  *Id*. at 1-2.  This language falls well short of a clear

indication that evidence or testimony was presented and considered on the underlying issues, and

as in *Owens*, this Court will not speculate on whether this means evidence was presented and

considered.

Similarly, the Final Judgment Order does not indicate whether any depositions were taken,

documents exchanged, or discovery otherwise promulgated.  *See generally* Final Judgment Order.

The record is unclear as to whether a hearing on the issue of damages was actually held, as only

references to a hearing are set forth in paragraph 11 of the Motion for Summary Judgment ("On

September 2, 2020, the Norfolk Circuit [C]ourt conducted a hearing on the issue of damages.  After

the hearing, on October 1, 2020, the Norfolk Circuit Court entered . . . the [Final] Judgment Order

. . . ."); during the hearing on the Motion for Summary Judgment ("The state court conducted a

hearing, and at that hearing, awarded damages in favor of the plaintiffs against Christopher Delph

and the other defendant."); and in the opening line of the Final Judgment Order ("This matter came

to be heard before the Court on Tuesday, September 8, 2020 . . . .").  Motion ¶ 11; Apr. 7, 2021

Transcript, at 5; Final Judgment Order at 1.  As in *Owens*, that the record from the state court

incomplete is reinforced by the Plaintiffs' failure to submit a transcript or other evidence of a

hearing record.  On the issue of whether the state court considered any evidence, either testimonial

or documentary, Plaintiffs' counsel stated at the April 7, 2021 hearing, "I don't have anything in

the record that specifically says that evidence was presented on the liability issue."  Apr. 7, 2021

Transcript 6.  This representation is supported by both the Default Judgment Order and the Final

Judgment Order, each of which fails to indicate whether evidence was presented and considered

---

[10] Rule 3:8 of the Rules of the Supreme Court of Virginia states the requirements of responsive
pleadings, including demurrers, while Rule 3:19 controls the entry of default and default judgment.
Va. R. Sup. Ct. 3:8, 3:19.

by the state court, either as to liability or as to the damages awarded to the Plaintiffs. *See generally* Default Judgment Order; Final Judgment Order.  At the hearing on the Motion for Summary Judgment, counsel for the Plaintiffs urged the Court to consider the "extensive nature of the allegations," "the extensive notices . . . provided to Mr. Delph," that a demurrer was filed in the early stages of the state court proceedings, and the state court's findings of damages in support of the contention that the issues were actually litigated. Apr. 7, 2021 Transcript 6.  Even taking these assertions into account, the Plaintiffs have failed to sustain their burden as detailed and analyzed above.

In summary, the Court concludes that, like the outcome in the *Owens* case, there is no evidence in the record before this Court that the parties engaged in discovery, took depositions, or exchanged documents, or that the state court considered documentary evidence or heard testimony at any point during the proceedings there.  *See In re Owens*, 449 B.R. at 251-53.  As a result, pursuant to *TransDulles* and consistent with the case law of the Fourth Circuit, the Court cannot conclude that factual issues were actually litigated in the prior action that are necessary for this Court to enter a nondischargeability judgment.  Therefore, as the elements necessary for collateral estoppel to apply are not met, the Court finds that the Plaintiffs have failed to sustain their burden of proof, and their Motion for Summary Judgment must be denied.[11]

## V.  SUMMARY

For the reasons stated above, the Court finds that the elements of collateral estoppel are not met, and thus, collateral estoppel does not apply here.  Therefore, the Court concludes that the Plaintiffs' Motion for Summary Judgment should be denied.

---

[11] Having found that the relevant factual issues were not actually litigated in the state court proceedings, the Court cannot address whether the issues litigated were essential to the prior judgment.

The Court will issue a separate Order consistent with the conclusions contained in this Memorandum Opinion.  Further, the Court will proceed to establish a trial date.

The Clerk shall transmit a copy of this Memorandum Opinion to counsel for the Plaintiffs; to Mr. Delph; and to the United States Trustee.

Entered this **7th day of June, 2021**, at Norfolk, in the Eastern District of Virginia.

_____
STEPHEN C. ST. JOHN
United States Bankruptcy Judge

/s/ Stephen C St-John

Entered On Docket: Jun 7 2021